UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHRISTINA VILLARREAL AND | § | |
| LEONARD BARBA, AS NEXT | § | |
| FRIENDS FOR JANE DOE, | § | |
| A MINOR | § | |
| | § | |
| *the minor,* | § | Cause No. <u>1:17-cv-00396</u> |
| | § | JURY TRIAL DEMANDED |
| vs. | § | |
| | § | |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT, AUSTIN | § | |
| INDEPENDENT SCHOOL | § | |
| DISTRICT POLICE DEPARTMENT | § | |
| CHIEF ERIC MENDEZ AND | § | |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT POLICE DEPARTMENT | § | |
| DETECTIVE ALEX PHILLIPS | § | |
| | § | |
| *Defendants.* | | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

The Austin Independent School District and Austin Independent School District Police Department have for several years at least, failed to promptly and appropriately investigate and respond to reported sexual assaults and sexual misconduct that has fostered an environment that substantially increased students' chances of being sexually assaulted. In addition, the facts described herein indicate

a school police department motivated to cover up rather than impartially investigate sexual assaults between faculty/staff and students.  Defendants' failure to promptly and appropriately investigate and respond to these assaults and reports of sexual harassment caused a hostile environment, effectively denying female students access to educational opportunities.    Defendants' actions and inaction amount to deliberate indifference as well as knowing and intentional deprivation of constitutional rights.

## I. PARTIES

1.     Minor Plaintiff, represented by next friends, is Jane Doe, a four-year-old cisgender female.  At all material times relevant hereto, Jane Doe was living in the County of Travis, State of Texas.  At the time of events complained of herein, Jane Doe was a student attending Austin Independent School District.

2.     Plaintiff Christina Villarreal is the natural mother of Jane Doe.  At all material times relevant hereto, Villarreal was living in the County of Travis, State of Texas.

3.     Plaintiff Leonard Barba is the natural father of Jane Doe.  At all material times relevant hereto, Barba was living in the County of Travis, State of Texas.

4.     Defendant, Austin Independent School District ("AISD"), is an educational institution in the County of Travis, State of Texas, and is organized under the laws

of the State of Texas.  At all material times relevant hereto, Plaintiff Jane Doe was a student in AISD.  AISD may be served through its President, Kendall Pace at 1111 W. Sixth St, A250, Austin, Texas 78703.

5.    Defendant Detective Alex Phillips is an employee of the AISD Police Department.  He may be served through AISD President, Kendall Pace at 1111 W. Sixth St, A250, Austin, Texas 78703.

6.    Defendant Police Chief Eric Mendez is an employee of the AISD Police Department.  He may be served through AISD President, Kendall Pace at 1111 W. Sixth St, A250, Austin, Texas 78703.

## II.  JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

8.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the

jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

9.      The Minor, Jane Doe, brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

## III.  <u>APPLICABLE LAW</u>

11.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states that:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving federal financial assistance ..."

12.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational

funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

13.    Title IX jurisprudence, as well as Department of Education regulations, have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

> "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical.  Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

14.    Regardless, in the circumstances giving rise to the claims of Minor Jane Doe, and others, a significant history of faculty-on-student harassment, resulting from deliberate indifference, has been allowed to continue at AISD for many years.

15.    The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.

16.    "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).  To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir.1990) (citations omitted), cert. denied, 498 U.S. 1040 (1991). "The Supreme Court has expanded the definition of 'liberty' beyond the core textual meaning of that term to include [not only] the ... privileges [expressly] enumerated by the Bill of Rights, [but also] the 'fundamental rights implicit in the concept of ordered liberty' and 'deeply rooted in this Nation's history and tradition' under the Due Process Clause." *Id.; see also Bowers v. Hardwick*, 478 U.S. 186, 191 (1986).

17.    The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive a person of life, liberty or property without due process of law." The Supreme Court has noted: "Although a literal reading of the Clause might suggest that it governs only the procedures by which a State may deprive persons of liberty, for at least 105 years, at least since *Mugler v. Kansas*, 123 U.S. 623 [in 1887], the Clause has been understood to contain a substantive component as well ..." *Planned*

*Parenthood v. Casey*, 505 U.S. 833, 843, (1992) (citation omitted). This substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

18.    In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir.1987), the Fifth Circuit found that corporal punishments actions by a teacher violated the student's substantive due process" 'right to be free of state-occasioned damage to [her] bodily integrity.' " *Id.* (quoting *Shillingford*, 634 F.2d at 265). The Fifth Circuit also has held that the infliction of "corporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir.) (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir.1984)), *cert. denied*, 498 U.S. 908 (1990).

19.    In *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.1987) (en banc), the Fifth Circuit held, "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse - here, sexually fondling a 15-year old school girl and statutory rape - by a public schoolteacher."

## IV.  <u>FACTS</u>

20.    In recent months AISD has been the subject of numerous media reports concerning: (1) sexual assaults and sexual misconduct on its campuses; and (2) inadequate criminal investigations following the filing of formal complaints with AISD by the respective students' parents.

21.    The specific events described below, along with other cases and events, establish that Defendants collectively and in concert had a policy, whether formal or informal, of failing to adequately investigate and respond to incidents of reported sexual assault.

22.    The events described below, as well as others, establish that Defendants were deliberately indifferent to the rights of students' bodily integrity and right to a nondiscriminatory educational environment.

23.    In many of the sexual assault cases investigated by Plaintiffs, one common thread appears, the appointment of AISD PD detective Defendant Alex Phillips.

24.    Defendant Phillips is repeatedly assigned to investigate sexual assault and sexual misconduct claims in AISD.

25.    Detective Phillips routinely concludes such investigations very quickly without charges against perpetrators.

26.    Detective Phillips routinely concludes such investigations very quickly and thereby deprives victims of remedies and accommodations owed them as victims of sexual assaults.

27.    Detective Phillips has been employed by AISD PD since 2002.   Upon information and belief, he does not possess any specialized training in sexual assault or sexual misconduct investigation; despite the fact the AISD PD employs approximately 63 law enforcement officers, Detective Phillips is routinely assigned to investigate sex crimes for AISD PD.

28.    Whether or not criminal charges are tenable in each case, Defendants failed to take any meaningful action in response to the reports of sexual assault, as well as others.

29.    Defendants actions to remedy a hostile education environment in response to reports of sexual assault were non-existent and even where actions were taken, they were inadequate and/or completely insufficient.

30.    The minor Plaintiff, and other students, suffered sex-based harassment that was severe, pervasive, and objectively offensive.

31.    The sex-based harassment deprived Minor Plaintiff of access to the educational opportunities or benefits of the school.

32.    Defendants had the authority to take remedial action to correct the sex-based harassment.

33.    Defendants had actual knowledge of the sex-based harassment.

34.    The School District and its Defendants responded with deliberate indifference to the sex-based harassment.

35.    Defendants' response and its officials' conduct was such that future reasonable students in Plaintiffs' circumstances would be chilled from reporting sexual harassment.

36.    The events described in Section (a) below regarding the Minor Plaintiff, along with the events described in the remaining subsections that occurred to non-party minors, as well as other events not described herein, together and separately, establish unconstitutional and illegal deliberate indifference by AISD and Defendant individuals.

a.    **Boone Elementary School**

37.    Minor Jane Doe was enrolled in the Pre-Kindergarten 3 Program at Boone Elementary in AISD for the 2016-2017 academic year.

38.    As a young, minor student at Boone Elementary, AISD had complete control over the minor.

39.    On February 7, 2017, at approximately 8:00 a.m., Jane Doe's mother Christina Villarreal ("Villarreal") dropped Jane Doe off at Boone Elementary.

40.    On February 7, 2017, at approximately 11:00 a.m., Villarreal picked Jane Doe up from Boone Elementary.

41.    Later that day while at home, the minor went to use the restroom and began screaming in distress after she sat on the toilet.

42.    Villarreal attended to Jane Doe in the restroom, where she discovered that Jane Doe's panties were blood-soaked.

43.    Villarreal moved Jane Doe into a bedroom for examination and discovered severe bruising and bleeding to Jane Doe's genital area, which was documented by video and photography.

44.    Villarreal called Jane Doe's teacher ("Teacher") on the direct classroom phone line at approximately 3:00 p.m.  The teacher did not answer the call, and an urgent message was left on Teacher's voicemail.

45.    Because Teacher did not respond to the voicemail, Villarreal emailed Teacher at 4:07 p.m. with an urgent message to contact Jane Doe's parents.

46.    Teacher did not respond to the email; thus, Villarreal called Teacher a second time on Teacher's direct classroom phone line at approximately 5:45 p.m. and left an urgent message to contact Jane Doe's parents.

47.    Jane Doe was taken to Dell Children's Medical Center Emergency Room ("Dell Children's") and arrived at approximately 6:30 p.m. on February 7, 2017.

48.    On the way to Dell Children's, Jane Doe's parents drove past Boone Elementary at approximately 6:00 p.m. and observed that: (1) the only vehicle in the parking lot was Teacher's car; and (2) the only visible light on at Boone Elementary was Teacher's classroom light.

49.    Jane Doe was admitted to Dell Children's at approximately 7:30 p.m. on February 7, 2017, and was evaluated by a Trauma Surgeon at approximately 10:00 p.m.

50.    Jane Doe was admitted to surgery at 11:00 p.m. on February 7, 2017 for treatment of "vaginal trauma"; specifically, Jane Doe was treated for "emergent surgical repair of her vaginal lacerations" and "Sexually Transmitted Infection testing."

51.    Jane Doe was placed under general anesthesia and a vaginoscopy and Sexual Assault Nurse Evaluation ("SANE") was conducted.

52.    Jane Doe's SANE kit was collected by Defendant AISD Police Department Detective Alex Phillips ("Detective Phillips") at Dell Children's following Jane Doe's surgical procedure.

53.    Following Jane Doe's surgical procedure, the Trauma Surgeon met with Jane Doe's parents and Detective Phillips; the diagnosis of sexual assault was orally conveyed to Jane Doe's parents in the presence of Detective Phillips.

54.    Detective Phillips confronted the Trauma Surgeon following the diagnosis by stating, "You have no proof of that."   The Trauma Surgeon replied to Detective Phillips that the injury was not consistent with a fall or "straddle injury."

55.    On February 7, 2017, Dell Children's diagnosed Jane Doe with: (1) "Sexual assault by bodily force by person unknown to victim;" and (2) "Contusion of vagina and vulva."

56.    At Dell Children's on February 7, 2017, Detective Phillips opened AISD Incident No. 17-000544 for Jane Doe's reported sexual assault.

57.    At Dell Children's, Detective Phillips admonished Jane Doe's parents not to speak to anyone about the reported sexual assault, including Teacher or the Austin Police Department.

58.    At Dell Children's on February 7, 2017, Detective Phillips collected Jane Doe's bloody panties as evidence, and downloaded videos and photographs of Jane Doe's injuries from Villarreal's mobile device.

59.    On February 8, 2017, Teacher was placed on administrative leave.

60.   At approximately 2:00 p.m. on February 8, 2017, Jane Doe was released from Dell Children's and returned home.

61.   On February 10, 2017, Villarreal attempted to speak with Boone Elementary Principal at the school.  He was not available, so Villarreal left a written note with an Assistant Principal to call Villarreal as soon as possible.

62.   On February 10, 2017, Villarreal received a phone call from a representative of the Superintendent's Office who stated that they could not discuss the matter as it was under investigation.

63.   On or about February 12, 2017, Jane Doe submitted to a forensic interview at the Child Advocacy Center with Detective Phillips and a representative of the Travis County District Attorney's office present.

64.   On February 14, 2017 (one week after the alleged sexual assault and four days after Villarreal requested to speak with Principal Stevens), Principal Stevens contacted Villarreal to schedule a meeting for February 16, 2017.

65.   On February 15, 2017, Villarreal was approached by approximately five mothers of students in Teacher's class, who stated that their children have recently stopped using the restroom at Boone Elementary and instead, will "hold it" from drop off time to pickup time.

66.    On February 16, 2017, from approximately 8:00 to 9:30 a.m., Villarreal met

with Principal Stevens in his office at Boone Elementary; Principal Stevens indicated

that he was not aware that the allegations were sexual in nature until Villarreal told

him, and stated he was simply instructed by AISD Human Resources to place

Teacher on administrative leave.

67.    Following the meeting on February 16, 2017 – and for the first time since the

alleged sexual assault – Principal Stevens sent home a note addressed to Boone

Elementary parents which read:

> "As you know, [Teacher] has been out for the last several days. I know
> that you are concerned about [Teacher's] absence.  [Teacher] has had to
> be out and I am asking that, at this time, we respect [Teacher's] privacy.
> While we do not yet have an exact date for [Teacher's] return, we are
> anticipating that it will be soon.  I will continue to keep you informed
> on the length of [Teacher's] anticipated absence, but at this time, no
> additional details are available."

68.    On February 18, 2017, Jane Doe had an "outcry" to Villarreal, wherein she

identified her assailant.

69.    On February 20, 2017, Villarreal emailed Detective Phillips and stated Jane

Doe had an outcry, and requested information about the status of the investigation;

Detective Phillips responded that they had not yet interviewed Teacher – despite the

sexual assault investigation having been opened thirteen days prior.

70.    On February 22, 2017, the mother of a classmate of Jane Doe stated to Villarreal that her 3-year-old daughter ("Jane Doe No. 2") indicated to the parents that Teacher sexually assaulted Jane Doe No. 2 at Boone Elementary.

71.    Upon information and belief, Jane Doe No. 2 was examined at Dell Children's on February 22, 2017; Detective Phillips met the family at Dell Children's and opened AISD Incident No. 17-000796.

72.    Upon information and belief, Jane Doe No. 2 withdrew from Boone Elementary on February 23, 2017, and did not return.

73.    On February 24, 2017, AISD held a meeting with parents of students in Boone Elementary's Pre-Kindergarten 3 Program, to discuss "safety concerns."

74.    Principal Stevens and AISD Police Chief Eric Mendez ("Chief Mendez") were present at the meeting on February 24, 2017, along with other representatives from AISD.

75.    At the meeting on February 24, 2017, parents asked Chief Mendez where Teacher was; Chief Mendez responded "we cannot comment on an ongoing investigation."

76.    After the meeting, Villarreal asked Chief Mendez if she could address the parents and ask questions about any changes in their own children's behavior; Chief Mendez allowed Villarreal to speak but warned her that by speaking to the other

parents, Jane Doe would be "revictimized" because "when that child becomes a public figure, and everybody knows, then everybody looks at that child and that child goes through embarrassment because everybody knows."

77.     On February 28, 2017, Detective Phillips called Villarreal and stated that AISD PD had concluded its investigation and did not have enough evidence to pursue charges, and the investigation was closed.

78.     The case was closed without Jane Doe's rape kit being processed and examined by AISD PD.  Moreover, Chief Mendez publicly admitted, "[d]uring the course of the investigation, we failed to get a medical record that could prove to be vital in determining whether we have a sexual assault or not.  Yes, it is important, yes we should have looked at it."

79.     Obviously Detective Phillips falsely concluded his investigation by declaring that there was no evidence a sexual assault occurred, despite being present during the Trauma Surgeon's diagnosis on February 7, 2017, and having access to Jane Doe's surgical records, photographs and videos of Jane Doe's injuries, and collecting Jane Doe's bloody panties as evidence.

80.     Detective Phillips has previously closed numerous sexual assault and sexual misconduct cases for the stated reason "lack of evidence" of sexual assault, despite

victims and medical providers stating that sexual assault or sexual misconduct occurred.

81.    Villarreal also asked Phillips about the second complaint by Jane Doe No. 2, and Detective Phillips indicated they were unrelated.

82.    Upon information and belief, AISD Incident No. 17-000796 involving Jane Doe No. 2 was also closed on March 6, 2017, for lack of evidence.

83.    On March 8, 2017, Principal Stevens notified Jane Doe's parents that Teacher would return to Boone Elementary on March 20, 2017.

84.    Jane Doe's parents requested an in-person meeting with Teacher before she returned, as they had not been given an opportunity to speak with her since the alleged sexual assault was reported; Principal Stevens scheduled a meeting between the parents, himself and Teacher for March 10, 2017, at 8:30 a.m.

85.    On March 9, 2017, Principal Stevens left a voicemail with Jane Doe's parents that the meeting was "postponed" without giving a reason.

86.    On March 10, 2017, Principal Stevens sent a text message to Villarreal that stated there would be no meeting with Teacher; specifically Principal Stevens wrote: "Don't know if this is a good time for a phone call.  [Teacher] does have an attorney who is saying no to the meeting."

87.    Between March 11 and March 19, 2017, Principal Stevens called Villarreal to discuss "ground rules" for Teacher's return; Principal Stevens stated that there would be numerous adults supervising Teacher during her first week back at Boone Elementary, including a psychologist, Human Resources representative, and AISD representative.   Following the first week, there would be 2-3 adults acting as monitors in the classroom, and Boone Elementary principals would conduct random observations in the classroom for the remainder of the year.

88.    Teacher returned to Boone Elementary on March 20, 2017, following 39 days of administrative leave.

89.    On March 22, 2017, Principal Stevens contacted Villarreal to tell her that she is not to discuss "the incident" with the teacher, and can only discuss Jane Doe's curriculum and studies.

90.    On March 24, 2017, Principal Stevens sent an email to Sandra Creswell and Monica Gonzales in the Superintendent's Office, and copied Villarreal, which stated:

> "Mrs. Villarreal has asked me to once again on her behalf request a meeting with [Teacher] to discuss the events that occurred from the time she called and left messages on the afternoon in February when she initially contacted [Teacher] about an issue with [Jane Doe] and the time delay before [Teacher] attempted to contact her.  I explained that this was not something that was approved by [Teacher's] attorney and at this time could not take place.  She understands this but still wanted to request a meeting.  It is her thought that her request is a proper one

and should be honored.  I explained that I could not approve this, but I would let you know that she was still requesting the meeting."

91.    There was no response to this e-mail.

92.    On April 27, 2017, AISD held a town hall meeting for the Boone Elementary parents.  Chief Mendez represented that no other complaints had been made against Teacher, despite AISD Incident No. 17-000796 being opened on February 22, 2017.

93.    As of the date of the filing of this Complaint, Jane Doe's parents have never spoken to Teacher regarding the events at Boone Elementary on February 7, 2017, nor has AISD or AISD PD provided any explanation of their findings related to the alleged sexual assault.

94.    At all material times, AISD was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.* for its activities including financial aid and research grants, among other sources.

95.    The activities of AISD and these Defendants affects interstate commerce.

96.    AISD implemented and executed policies and customs that resulted in the deprivation of Minor Jane Doe's constitutional, statutory, and common-law rights.

97.    AISD is responsible for providing security for its students and guests.

98.    AISD is responsible for ensuring that each of its employees are properly trained and supervised to perform their jobs.

99.    AISD is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

100.    AISD received reports from Minor Jane Doe concerning occurrences of sexual abuse and sexual harassment Minor Jane Doe experienced while at an academic activity at AISD.

101.    AISD failed to adequately investigate each and every one of the events Minor Jane Doe reported to AISD in violation of Title IX.

102.    AISD, had on previous occasions, failed to adequately investigate and punish complaints of sexual assault on its campuses.

103.    AISD employees took several overt acts in furtherance of their common goal, including misleading the Plaintiffs, concealing meaningful facts from Plaintiffs, misrepresenting their actions to Plaintiffs, failing to prosecute criminal activity, investigate and report the minor's claims, as well as related crimes, and generally failing to provide the minor with a safe academic environment free from sexual harassment and abuse.

104.    At all times relevant to this Complaint, Defendants failed to protect the minor, and others, as they failed to provide safety to the students of AISD.

105.    As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to reports of sexual assault,

sexual misconduct and subsequent sexual harassment of the minor, as well as violations of her state and federal legal rights, the minor has suffered and will continue to suffer untold psychological damage, profound emotional distress, permanent loss of standing in the community and damage to her reputation, and her future relationships have been negatively affected.

106.    The minor has also been deprived of a normal education due to Defendants' conduct and the resulting educational environment, which they created.

**b.    Lanier High School**

107.    Jane Doe No. 3 was a 14-year-old cisgender female Freshman enrolled at Lanier High School in AISD for the 2014 – 2015 academic year.

108.    On or about  April 1, 2015, Jane Doe No. 3 was forced into a restroom on the Lanier High School campus by a Sophomore at Lanier High School, where she was sexually assaulted in a stall.

109.    On approximately April 20, 2015, Jane Doe No. 3 made an outcry describing the sexual assault to a classmate friend, who then reported the assault to the Lanier High School staff.  The identity of the alleged assailant was identified to the Lanier High School staff.

110.    Jane Doe No. 3's parents went to Lanier High School on approximately April 20, 2015, to meet with AISD PD Officer Sonia Ramirez and Sargent Lance

Cox ("Sargent Cox").   AISD Incident No. 15-001892 was opened for the alleged sexual assault investigation.

111.   Officer Ramirez and Sargent Cox stated to Jane Doe No. 3's parents that they reviewed surveillance video but could not find evidence of the sexual assault, because the exact date and time of the assault was not known.

112.   On April 21, 2017, Jane Doe No. 3 withdrew from Lanier High School and reenrolled in a school district outside of AISD.

113.   On April 27, 2017, the parents of Jane Doe No. 3 contacted a Child Advocacy Center to schedule a forensic interview for Jane Doe No. 3.

114.   The Child Advocacy Center contacted AISD PD but, upon information and belief, was told that no forensic interview would be scheduled because AISD PD were closing their investigation into the alleged assault.

115.   The parents of Jane Doe No. 3 were informed by AISD PD that Sargent Cox had taken paternity leave and was unavailable to discuss AISD Incident No. 15-001892 until he returned.

116.   Upon Sargent Cox' return from paternity leave on or about May 15, 2015, Jane Doe No. 3's parents contacted Sargent Cox to discuss the status of AISD PD's investigation.   Sargent Cox told Jane Doe No. 3's parents that the Travis County District Attorney's Office had reviewed the case and declined to staff the case or

pursue charges against any individual for a lack of evidence, and the case was being closed as a result.

117.  On approximately May 15, 2015, Jane Doe No. 3's father contacted Sargent Cox' supervisor, Lieutenant Rodney Anderson ("Lieutenant Anderson") to discuss why the case was being closed, and pleaded for AISD PD to continue the investigation.  During their conversation, Lieutenant Anderson became cross with Jane Doe No. 3's father, and hung the phone up on him.  This was the last conversation Jane Doe No. 3's parents had with AISD PD.

118.  Subsequent to the sexual assault, Jane Doe No. 3 was diagnosed by a therapist with Post Traumatic Stress Disorder.  Jane Doe No. 3 began psychological therapy and counseling on April 23, 2015, and continues to receive psychological therapy and counseling for the trauma associated with this event.

119.  These Lanier High School events, as well as other cases in the district, demonstrate that the inadequate sexual assault investigations performed by Detective Phillips were part and parcel of department wide policies and procedures concerning investigations of sexual assault.

c.    O'Henry Middle School

120.  Jane Doe No. 4 was an 8th Grade student enrolled at O. Henry Middle School in AISD during the 2015-2016 academic year.

121.   On or about May 2, 2016, a teacher at O. Henry Middle School unilaterally initiated predatory electronic communications with Jane Doe No. 4 via various electronic social media tools, including Instagram and Snapchat.

122.   These electronic communications were written by a teacher using a pseudonym and exhibited classic signs of child predator behavior.

123.   The teacher encouraged Jane Doe No. 4 to participate in secretive electronic communications and stated that the engaged in such activities with two other O. Henry students.

124.   In an attempt to conceal his identity, the teacher instructed Jane Doe No. 4 to not use his name in their electronic communications.

125.   The teacher advised Jane Doe No. 4 that if she told anyone of his surreptitious electronic communications she would be "dead to him."

126.   Jane Doe No. 4 provided screen shots of the teacher's electronic communications to O. Henry Principal Pete Price ("Principal Price") on May 6, 2016.

127.   On May 11, 2016, Jane Doe No. 4's father met with Principal Price and asked if he had reported the teacher's predatory communications to the authorities before allowing the teacher to resign.   Principal Price stated he had not because he determined that no crime had been committed.

128.   On May 11, 2016, Jane Doe No. 4's father demanded that the authorities be notified of the teacher's communications.  After this demand was made, Principal Price reluctantly notified AISD PD of the teacher's communications.

129.   Defendant Detective Phillips was designated as lead investigator and the matter was assigned AISD PD Incident No. 16-4141703.

130.   On or about May 12, 2016, APD's specialized online solicitation unit assumed control of the investigation and the case and the investigation was assigned APD Case No. 16-5019779.

131.   On May 12, 2016 – six days after Jane Doe No. 4 provided the predatory communications to O. Henry Middle School's administration, Principal Price informed the O. Henry parents that a "student reported receiving inappropriate electronic communication from a teacher.  ... The teacher resigned on Friday, effective immediately."

132.   The teacher's communications with Jane Doe No. 4 were provided to O. Henry Middle School administration and AISD PD – including the communications wherein the teacher admitted to secretly communicating with two other O. Henry Middle School students.

133.   On May 16, 2016, Jane Doe No. 4's father was advised by APD that AISD PD "requested to take the case back" from APD.  After AISD PD wrested control of the

investigation from APD, the case was immediately assigned back to Detective Phillips.

134.    Despite evidence of predatory communications sent from the O. Henry Middle School teacher to Jane Doe No. 4, Detective Phillips closed the investigation on July 13, 2016.

135.    Detective Phillips stated in an email to the father of Jane Doe No. 4, dated July 13, 2016, that "[AISD PD] has closed this case as we were unable to develop probable cause for an offense.  Thank you for all your patience amid all the moving parts."

**d.    Other instances of AISD PD and Detective Phillips failing to conduct appropriate investigation into sexual assault complaints**

136.    A five-year-old Kindergarten student enrolled at Hart Elementary in AISD during the 2014 – 2015 academic year reported to a parent that a cafeteria worker touched the student's genitals in a restroom at the school.

137.    An officer with AISD Police Department visited the student's mother at her home on November 6, 2014, and asked if the student could provide a description of the cafeteria worker.  The student complied.

138.    On November 6, 2014, the AISD PD officer stated that he was going to Hart Elementary to investigate and would contact the student's mother later.  Within hours, the AISD PD officer informed the student's mother that they found no

pertinent evidence on the school's surveillance video and thus, AISD PD would not pursue an investigation.

139.  On November 9, 2014, the student was taking a shower and cried out in distress complaining of pain in the genital area.  The student was immediately taken to St. David's Medical Center Emergency Room.

140.  St. David's reported the incident to Austin Police Department who referred the case to AISD PD.

141.  Defendant Detective Alex Phillips was dispatched to St. David's to meet with the student's mother.  While at St. David's, Detective Phillips opened AISD Incident No. 14-005024 for the student's alleged sexual assault.  Detective Phillips scheduled a forensic interview for the student at the Child Advocate Center.

142.  On approximately November 14, 2014, the student was subjected to a forensic interview attended by Detective Phillips. The student's mother was not allowed to attend.

143.  Following the interview, Detective Phillips told the student's mother that, while the student did state that someone touched the student inappropriately, the student could not provide a specific enough description of the individual and thus, AISD PD were closing their investigation into the matter.  The investigation into the

sexual assault was concluded by AISD PD eight days after the initial report was made.

144.   On information and belief, the foregoing examples, as well as the Plaintiffs' ordeal is only a small collection of the cases of sexual assault swept under the rug by Defendants and those acting in concert.

## V.  CAUSES OF ACTION

### COUNT 1:

### VIOLATION OF TITLE IX

### (20 U.S.C. § 1681, *et seq.*)

### Deliberate Indifference Caused a Heightened Risk

145.   The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived the minor of access to educational opportunities or benefits provided by the school.

146.   The Defendants created and/or subjected the minor to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

    a) the minor was a member of a protected class;
    b) the minor was subjected to sexual harassment in the form of a sexual assault by a faculty member;
    c) the minor was subjected to harassment based on their sex;
    d) the minor was subjected to a hostile educational environment created by the Defendants' lack of policies and procedures and

failure to properly investigate and/or address the sexual assault and
subsequent harassment; and

e) the minor was subjected to a hostile educational environment
created by the Defendants' lack of policies and procedures and
failure to properly investigate and/or address prior sexual assault
reports and subsequent harassment;

147.   Defendants and its officials had actual knowledge of the sexual assault and the
resulting harassment of the minor created by its failure to investigate and discipline
the minor' attackers in a timely manner and consistent with federal and state law.

148.   Defendants' failure to adequately investigate and respond to prior reports of
faculty sexual assault created an environment that put the minor at enhanced risk of
being sexually assaulted, which she ultimately was.

149.   The Defendants' failure to promptly and appropriately respond to her and
others alleged sexual harassment resulted in the minor, on the basis of her sex, being
excluded from participation in, being denied the benefits of, and being subjected to
discrimination in the Defendants' education program in violation of Title IX.

150.   Defendants failed to take immediate, effective remedial steps to resolve the
complaints of sexual harassment, and instead acted with deliberate indifference
towards the minor and the students.

151.   Defendants persisted in its actions and inaction even after it had actual
knowledge of the harm suffered by the minor.

152.   Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

153.   This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

154.   The minor has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendants' deliberate indifference to their rights under Title IX.

155.   Plaintiffs pray for all those damages enumerated herein.

**Count 2:**

**VIOLATION OF TITLE IX**

**(20 U.S.C. § 1681, *et seq.*)**

**Retaliation by Withholding Protections Otherwise Conferred by Title IX**

156.   Immediately after Plaintiffs reported the sexual assault, AISD and Detective Phillips triggered an "investigation."

157.    However, unbeknownst to Plaintiffs, this investigation, like others before, was directed more with the goal of covering up the incident and the school district than bringing justice or remedy to Plaintiffs.

158.    The numerous reported incidents of Detective Phillips closing files for lack of evidence of sexual assault despite medical conclusions to the contrary demonstrate that AISD, AISD PD and these Defendants intentionally created a condition that ensured an unbalanced criminal investigation predetermined to find no sexual assault occurred.

159.    These Defendants intentionally created a condition that ensured that reports of sexual assault would not result in meaningful reforms or policy enforcement that would remedy the sex-based discrimination that occurred on campus.

160.    The after reporting events, themselves, independent from the sexual assault, subject the minor to sex-based discrimination in violation of Title IX.

161.    The short-lived "investigations" conducted by AISD PD following complaints of sexual assault and sexual misconduct establish that AISD and these Defendants retaliate against Plaintiffs for reporting a sexual assault with the goal of protecting the district and campus image while subjecting the minor to a discriminatory environment and process.

162.    The events following reports of sexual assault and sexual misconduct demonstrate deliberate indifference by these Defendants to the requirements of the federal laws invoked in this Complaint.

163.    Defendants breached their duties to the minor including but not limited to:

a.      Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education;

b.      Failing to properly and timely report incidents of claims sexual assault;

c.      Failing to provide adequate counseling and assistance to victims of sexual assault;

d.      Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;

e.      Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

f.      Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;

g.      Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

h.      Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

i.      Tolerating sexual assailants on campus despite reports to the highest levels of their identities;

j.      Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.      Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.      Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.      Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.      Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

o.      Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.      Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q.      Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities; and

r.      Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

164.    The breaches complained of herein proximately caused Plaintiff the injury and damages sought in this Complaint.

165.    Plaintiff prays for all those damages enumerated herein.

## COUNT 3:

## VIOLATION OF § 1983

## (20 U.S.C. § 1983)

### Substantive Due Process

166.   Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

167.   Defendant individuals were all state actors acting under the color of state law.

168.   Defendants each subjected the minor to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate assailant's misconduct; failing to appropriately discipline assailant; failing to adequately train Defendant individuals; and manifesting deliberate indifference to the sexual assault and ongoing harassment of the minor by the assailant.

169.   AISD has and/or had unconstitutional customs or policies of: a) failing to investigate evidence of criminal and tortious misconduct against AISD students in the nature of violations of their right to personal security and bodily integrity; and b) failing to adequately train and supervise AISD employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

170.   AISD has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other AISD students.

171.   AISD's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

172.   Defendant individuals are or were at the time of events complained of within, policymakers for the purpose of implementing the AISD's unconstitutional policies or customs.

173.   Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of AISD's deliberate indifference to her rights under the Fourteenth Amendment.

174.   Plaintiff prays for all those damages enumerated herein.

## COUNT 4:

## VIOLATION OF § 1983

### (20 U.S.C. § 1983)

### Procedural Due Process

175.   Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

176.   Defendant individuals were all state actors acting under the color of state law.

177.   Defendants each subjected the minor to violations of her right to personal security and bodily integrity and Equal Protection of Laws by failing to provide the minor and her parents a meaningful and balanced post-report investigation.

178.   The deliberate failure to provide a post-report investigation that complied with the standard of care for such activities may have permanently prevented the criminal prosecution of the assailant.

179.   Even if the previous paragraph not true, the deliberate failure to provide a post-report investigation that complied with the standard of care for such activities prevented the minor from enjoying post-assault educational remedies that would have restored her educational environment to one that complied with the basic constitutional promises owed the minor.

180.   AISD policies and/or practices constituted disparate treatment of sexual assault victims, and a deviation from the procedural due process rights owed them.

181.   Defendant individuals are or were at the time of events complained of within, policymakers for the purpose of implementing the AISD's unconstitutional policies or customs.

182.   The Minor has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment

fostered as a direct and proximate result of AISD's deliberate indifference to her rights under the Fourteenth Amendment.

183.   Plaintiff prays for all those damages enumerated herein.

## COUNT 5:

## VIOLATION OF 1983

## (20 U.S.C. § 1983)

## MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE AS TO RESPONSE TO SEXUAL ASSAULT

184.   Defendants were "state actors" working for AISD, a federally funded school system.

185   Defendants acted under "color of law" when refusing to respond to the Minor's sexual assault on school premises.

186.   Defendants failed to preserve the Minor's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

187.   Under the Equal Protection Clause of the Fourteenth Amendment, the Minor had the right to equal access to an educational environment free from harassment and discrimination.

188.    Defendants should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

189.    The Defendants violated Plaintiff's right to equal access by:

a.      Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b.      Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c.      Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d.      Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e.      Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f.      Failing to notify both parties of the outcome of the complaint.

190.    Defendant AISD violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

191.    These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

192.   Defendants' actions and omissions were the proximate cause of the minor's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of AISD's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

## VI.

### REQUEST FOR PERMANENT INJUNCTION

193.   The minor seeks a mandatory injunction ordering the Defendants to refrain from unlawful discrimination and/or retaliation, ordering Defendants to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendants to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual assaults; and cease taking action to prejudice the investigation of sexual assault complaints made by students.

## VII.

### ATTORNEYS FEES

194.   Plaintiff requests award of her reasonable and necessary attorneys' fees for this action.  *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.

## VIII.

## JURY DEMAND

195.  Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## RELIEF REQUESTED

196.  For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all relief the minor may show they are entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief.

197.  Without limitation, Plaintiff claims the following categories of damages:

     a.     Nominal damages for the civil rights violation(s);

     b.     Physical injuries and mental anguish resulting from assault;

     c.     Damages from lost employment, earnings and career opportunities;

     d.     Damages for loss of educational opportunities;

     e.     Damages resulting from civil rights violations;

     f.     Physical pain and mental anguish for the assault that without Defendants' deliberate indifference the minor would not have been put

at enhanced risk;

g.    Physical pain and mental anguish incurred as a result of Defendants' post-reporting acts that without Defendants' deliberate indifference could have been avoided;

h.    Physical impairment;

i.    Physical disfigurement;

j.    Medical and counseling expenses;

k.    Loss of consortium to romantic partners;

l.    Treble damages if provided by law;

m.    Punitive damages;

n.    Case expenses, expert fees and other costs of litigation;

o.    Pre-judgment and post-judgment interest at the rate provided for by law;

p.    Reasonable and necessary attorneys fees incurred by Plaintiff during her representation at any time and including the investigation, prosecution, filing, trial and appeal of this lawsuit; and

q.    All other damages allowed by law.

Dated this 2nd day of May, 2017

Respectfully submitted,

**BRAZIL & DUNN, L.L.P.**

 _/s/  Chad W. Dunn_
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

**FARRIS & HUTTON, PC**
Paul M. Guinn
State Bar No. 24012751
1515 S. Capital of Texas Hwy, Suite 204
Austin, Texas 78746
Telephone: (512) 646-2631
Facsimile: (512) 646-2636
pguinn@farrishutton.com

ATTORNEYS FOR PLAINTIFFS